IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA22-870

Filed 05 September 2023

Mecklenburg County, No. 17 CVD 11071

JAMES BROWN, Plaintiff,

v.

TIFFANY BROWN, Defendant.

Appeal by defendant from order entered 25 March 2022 by Judge Tracy H. Hewett in Mecklenburg County District Court. Heard in the Court of Appeals 8 August 2023.

*No brief filed on behalf of plaintiff-appellee.*

*Collins Family Law Group, by Rebecca K. Watts, for defendant-appellant.*

ZACHARY, Judge.

Defendant Tiffany Brown ("Wife") appeals from the trial court's order dismissing any equitable distribution claims between her and her former husband, Plaintiff James Brown ("Husband"). After careful review, we affirm.

## I.    Background

Husband and Wife married in April 2007 and had two children. Their relationship deteriorated, and on 19 June 2017, Husband filed a complaint for custody of the children. Husband and Wife then separated on 30 June 2017. On 17 July 2017, Wife filed her answer, which raised a counterclaim for child custody. Neither

Husband's complaint nor Wife's answer advanced any claim for or raised the issue of equitable distribution of the parties' marital estate.

On 9 January 2018, the trial court entered a temporary parenting arrangement order. On 28 March 2018, Husband filed a notice of pretrial conference, to be held on 11 May 2018. On 6 April 2018, Wife served Husband with a request for production of documents together with a set of interrogatories, both of which included several requests regarding the parties' property and finances. Wife filed her equitable distribution affidavit on 27 April 2018. On 1 May 2018, Husband filed his equitable distribution affidavit, and also served Wife with a set of interrogatories and a request for production of documents.

The equitable distribution matter came on for pretrial conference in Mecklenburg County District Court on 11 May 2018, and the trial court entered an "Initial Pretrial Conference, Scheduling, and Discovery Order in Equitable Distribution Matter" later that day. That order reflects, *inter alia*, that the parties had served their equitable distribution affidavits upon each other and would attend a mediated settlement conference with a court-appointed mediator. On 12 July 2018, the parties attended mediation, but the resulting report of the mediator filed on 23 July 2018 reflects that the parties reached an impasse.

In December 2018, in a separate proceeding, Wife obtained a judgment for absolute divorce from Husband. Nearly three years later, on 9 June 2021, Wife filed

notice of hearing for a status conference in the equitable distribution matter.[1] After the status conference, the trial court entered a "Status Conference Checklist and Order for Equitable Distribution Matter" on 28 July 2021.

On 2 December 2021, the matter came on for calendar call. At the calendar call, Husband asserted that no equitable distribution claims were actually pending before the court; the trial court scheduled a hearing for 28 January 2022 to resolve that issue. On the day of the hearing, Wife filed a memorandum of law in support of her contentions that (1) an equitable distribution claim was pending, in that the parties' equitable distribution affidavits acted as applications for equitable distribution under N.C. Gen. Stat. § 50-20(a) (2021) and Rule 7(b)(1) of the North Carolina Rules of Civil Procedure, and (2) Husband should be equitably estopped from denying the existence of an equitable distribution claim.

On 25 March 2022, the trial court entered an order in which it made the following pertinent findings of fact:

> 23. The Court finds that it is undisputed that there is not, nor ever was, a claim or cross claim, by either party pending for Equitable Distribution.
>
> 24. The Court finds that both parties were represented by counsel at critical points during which a claim/cross claim could have been made and that both participated as if a claim was pending such that [Husband] did not intentionally misrepresent that a claim was pending and was apparently under the same false assumption,

---

[1] In her appellate brief, Wife notes that the record is silent as to "why it was nearly three years after mediation was concluded that the matter again began to move forward in the court system."

therefore, [Wife] cannot claim she depended on his representation.

Consequently, the trial court concluded and ordered, simply: "Equitable Distribution shall be dismissed." Wife timely filed notice of appeal.

## II.    Discussion

Wife raises similar arguments on appeal as she did before the trial court. Wife first argues that the trial court erred by concluding that no equitable distribution claim was pending "[b]ecause the parties had properly applied to the court for an equitable distribution through the filing of their equitable distribution affidavits[.]" Then, Wife alleges that "[t]he trial court acted under a misapprehension of the law and so abused its discretion when it declined to estop [Husband] from denying the existence of an equitable distribution claim."

## A. Application for Equitable Distribution

Although Wife acknowledges that neither she nor Husband ever "filed a paper captioned as a complaint for equitable distribution, a counterclaim for equitable distribution, or a motion for equitable distribution," she nonetheless argues that she "sufficiently asserted a claim for equitable distribution through her pleadings which, when construed liberally, meet the statutory requirements for bringing an equitable distribution action by motion."

### 1.  *Standard of Review*

Wife "presents an argument regarding the proper method for asserting an

equitable distribution claim based upon an interpretation of [N.C. Gen. Stat.] § 50-11 and thus raises an issue of statutory construction." *Bradford v. Bradford*, 279 N.C. App. 109, 112, 864 S.E.2d 783, 786 (2021). We conduct de novo review of statutory construction issues. *Id.* "Pursuant to the de novo standard of review, the [C]ourt considers the matter anew and freely substitutes its own judgment for that of the trial court." *Id.* (citation omitted).

### 2. Analysis

In this case, it is undisputed that neither Husband nor Wife raised an equitable distribution claim in their initial pleadings; he did not raise it as a claim in his original complaint, nor did she raise it as a counterclaim in her answer. Instead, Wife contends that "the documents that they did file and sign were equivalent to filing a motion for equitable distribution." We disagree.

The basic procedure for properly raising a claim for equitable distribution is prescribed by statute. N.C. Gen. Stat. § 50-20(a) provides: "Upon application of a party, the court shall determine what is the marital property and divisible property and shall provide for an equitable distribution of the marital property and divisible property between the parties in accordance with the provisions of this section." N.C. Gen. Stat. § 50-20(a). Section 50-21(a) provides, in pertinent part:

> At any time after a husband and wife begin to live separate and apart from each other, a claim for equitable distribution may be filed and adjudicated, either as a separate civil action, or together with any other action brought pursuant to Chapter 50 of the General Statutes, or

as a motion in the cause as provided by [N.C. Gen. Stat. §] 50-11(e) or (f).

*Id.* § 50-21(a).

Notably, our General Statutes also provide: "An absolute divorce obtained within this State shall destroy the right of a spouse to equitable distribution under [N.C. Gen. Stat. §] 50-20 unless the right is asserted prior to judgment of absolute divorce . . . ." *Id.* § 50-11(e). As Wife obtained an absolute divorce during the pendency of this supposed equitable distribution claim, her right to equitable distribution is entirely reliant on whether she asserted that right prior to her absolute divorce.

"Equitable distribution is a property right. Therefore, a married person is entitled to maintain an action for equitable distribution upon divorce if it is properly applied for and not otherwise waived." *Hagler v. Hagler*, 319 N.C. 287, 290, 354 S.E.2d 228, 232 (1987) (citations omitted). However, our Supreme Court has recognized that "equitable distribution is not automatic. The statute provides that *a party seeking equitable distribution must specifically apply for it.*" *Id.* (emphasis added). The question thus arises: does the filing of an equitable distribution affidavit in an ongoing child-custody action constitute an "application of a party" for equitable distribution? We conclude that it does not.

Wife relies in part upon our recent opinion in *Bradford*, in which this Court recognized that "[n]one of the statutes addressing equitable distribution limit the particular type of pleading for 'filing' (N.C. Gen. Stat. § 50-21) or 'asserting' (N.C.

Gen. Stat. § 50-11) an equitable distribution claim." 279 N.C. App. at 121, 864 S.E.2d at 792. Wife reads our *Bradford* decision in tandem with the principle of broad construction of pleadings found in the North Carolina Rules of Civil Procedure, *see, e.g.*, N.C. Gen. Stat. § 1A-1, Rule 8(f) ("All pleadings shall be so construed as to do substantial justice."), to claim that, "[s]o long as the party has made assertions sufficient to put the other party on notice that an equitable distribution is being sought and the basis for that requested relief, the party has sufficiently applied for an equitable distribution."

However, in *Bradford* and each of the cases upon which Wife relies, the issue was whether a party sufficiently asserted an equitable distribution claim in the party's complaint, answer, or motion in the cause. *See Bradford*, 279 N.C. App. at 121, 864 S.E.2d at 792 (concluding that a wife's motion in the cause asserting a claim for equitable distribution in her husband's absolute divorce action was proper); *see also, e.g., Coleman v. Coleman*, 182 N.C. App. 25, 29, 641 S.E.2d 332, 336 (2007) (concluding that a wife's " 'request' for 'equitable distribution' [in her counterclaim] was sufficient to put [her husband] on notice that [the wife] was asking the court to equitably distribute the parties' marital and divisible property"); *Hunt v. Hunt*, 117 N.C. App. 280, 283, 450 S.E.2d 558, 561 (1994) (concluding that the husband, in his answer, "raised the issue of distribution of the parties' marital property and prayed for the affirmative relief of 'an order requiring [the husband] and [the wife] to distribute any and all assets in an equitable manner', in effect asserting a

counterclaim for equitable distribution").

None of these cases, however, involved a supposed "application of a party" for equitable distribution, N.C. Gen. Stat. § 50-20(a), by means of filing an equitable distribution affidavit rather than raising an equitable distribution claim in "a separate civil action, or together with any other action brought pursuant to Chapter 50 of the General Statutes, or as a motion in the cause as provided by [N.C. Gen. Stat. §] 50-11(e) or (f)." *Id.* § 50-21(a).

Moreover, N.C. Gen. Stat. § 50-21(a) provides that "the party who first asserts the [equitable distribution] claim shall prepare and serve upon the opposing party an equitable distribution inventory affidavit" and that this affidavit must be filed "[w]ithin 90 days after service of a claim for equitable distribution[.]" N.C. Gen. Stat. § 50-21(a). Adopting Wife's argument would require us to accept the facially absurd position that an equitable distribution affidavit, by which a party may "first assert[ ] the claim[,]" must be filed "[w]ithin 90 days after service" of itself. *Id.* "It is well settled that in construing statutes courts normally adopt an interpretation which will avoid absurd or bizarre consequences . . . ." *Romulus v. Romulus*, 216 N.C. App. 28, 34, 715 S.E.2d 889, 893 (2011). Accordingly, we decline to accept Wife's argument, and affirm the trial court's conclusion that "there is not, nor ever was, a claim or cross claim, by either party pending for Equitable Distribution."

**B. Estoppel**

Alternatively, Wife argues that "[t]he trial court acted under a

misapprehension of the law and so abused its discretion when it declined to estop [Husband] from denying the existence of an equitable distribution claim." However, in her appellate brief, Wife relies upon arguments not made before the trial court below; accordingly, this argument is not properly before us.

At the 28 January 2022 hearing, Wife's counsel argued that Husband "should be equitably estopped from asserting that there's no valid [equitable distribution] claim." Wife's counsel further explained: "It's not fair for a litigant to notice a hearing, file the appropriate documents, participate in it for four years, and then say, oh, there's nothing there, sorry. That's not fair."

On appeal, Wife challenges the trial court's conclusion of law #24, which states, *inter alia*, that both parties "participated as if a claim was pending such that [Husband] did not intentionally misrepresent that a claim was pending and was apparently under the same false assumption, therefore, [Wife] cannot claim she depended on his representation." In so deciding, the trial court clearly was referencing the elements of equitable estoppel, consonant with Wife's argument below.

To invoke the doctrine of equitable estoppel, a party must prove the following elements:

> (1) The conduct to be estopped must amount to false representation or concealment of material fact or at least which is reasonably calculated to convey the impression that the facts are other than and inconsistent with those which the party afterwards attempted to assert;

(2)  Intention or expectation on the party being estopped that such conduct shall be acted upon by the other party or conduct which at least is calculated to induce a reasonably prudent person to believe such conduct was intended or expected to be relied and acted upon;

(3)  Knowledge, actual or constructive, of the real facts by the party being estopped;

(4)  Lack of knowledge of the truth as to the facts in question by the party claiming estoppel;

(5)  Reliance on the part of the party claiming estoppel upon the conduct of the party being sought to be estopped; [and]

(6)  Action based thereon of such a character as to change his position prejudicially.

*Beck v. Beck*, 175 N.C. App. 519, 527, 624 S.E.2d 411, 416 (2006) (citation and emphasis omitted).

On appeal, however, Wife casts a broader net across several other estoppel doctrines. As our Supreme Court has explained: " 'Estoppel' is not a single coherent doctrine, but a complex body of interrelated rules, including estoppel by record, estoppel by deed, collateral estoppel, equitable estoppel, promissory estoppel, and judicial estoppel." *Whitacre P'ship v. Biosignia, Inc.*, 358 N.C. 1, 13, 591 S.E.2d 870, 879 (2004). "North Carolina has also adopted the doctrine of quasi-estoppel." *Snow Enter., LLC v. Bankers Ins. Co.*, 282 N.C. App. 132, 142, 870 S.E.2d 616, 624, *disc. review denied*, 382 N.C. 720, 878 S.E.2d 806 (2022).

Wife abandons the doctrine of equitable estoppel as a defense on appeal. Instead, from this roster of other estoppel doctrines, she has selected the doctrines of

judicial estoppel and quasi-estoppel. Wife seeks to benefit from the fact that, unlike equitable estoppel, both judicial estoppel and quasi-estoppel lack the "requirement of detrimental reliance on the part of the party invoking the estoppel." *Whitacre*, 358 N.C. at 19, 591 S.E.2d at 882.

It is well settled that "the law does not permit parties to swap horses between courts in order to get a better mount" on appeal. *Weil v. Herring*, 207 N.C. 6, 10, 175 S.E. 836, 838 (1934). Accordingly, where a party "impermissibly presents a different theory on appeal than argued at trial," the argument "is not properly preserved and is waived" on appeal. *Angarita v. Edwards*, 278 N.C. App. 621, 625, 863 S.E.2d 796, 800 (citation, brackets, and internal quotation marks omitted), *appeal dismissed*, 379 N.C. 159, 863 S.E.2d 601 (2021). Wife has impermissibly presented a pair of different theories on appeal than she argued at trial, theories which the trial court did not have opportunity or reason to consider below. As such, this argument is not properly preserved, and is waived on appeal. *See id.*

Moreover, assuming, *arguendo*, that Wife properly preserved her quasi-estoppel argument, she has not established that Husband should be estopped under that doctrine. Our Supreme Court has described quasi-estoppel as a "branch of equitable estoppel"—albeit one that "may be more closely related to judicial estoppel than any other equitable doctrine." *Whitacre*, 358 N.C. at 17, 18, 591 S.E.2d at 881, 882. "Under a quasi-estoppel theory, a party who accepts a transaction or instrument and then accepts benefits under it may be estopped to take a later position

inconsistent with the prior acceptance of that same transaction or instrument." *Id.* at 18, 591 S.E.2d at 881–82. Wife has not shown here that Husband "accept[ed] a transaction or instrument" by responding to her equitable distribution affidavit, or that he has accepted a "benefit under" that affidavit. *Id.* Thus, Wife's reliance on the doctrine of quasi-estoppel is misplaced.

### III.    Conclusion

For the foregoing reasons, the trial court's order is affirmed.

AFFIRMED.

Judges COLLINS and RIGGS concur.